Next case is Gary Biggers versus the Department of the Navy. Page 13, 3059, Ms. Lasher. Good morning, Your Honors, may it please the Court. Let me begin with an error on pages 11 and 13 of the Navy's brief. Everything raised here is assertedly an error. Pardon? All arguments are that it is an error. Asserted error, an alleged error in the brief. You mean in the brief, sorry. In both places, the brief states that Mr. Biggers stipulated to each of the factors that Egan says deprived the Board of Jurisdiction. That is inaccurate. What Egan says is the three factors to consider are whether a security clearance was denied, whether it was a requirement of the position, and whether the procedures set forth in 7513 were followed. Mr. Biggers did not stipulate that his security clearance was denied. He stipulated it was suspended. And that is a vast difference. And that is a specific question this Court needs to consider in the context, and it really has not considered. Many of the previous cases have lumped together suspension and revocation. Are you suggesting there's a difference in the sense that if a security clearance is only suspended and not revoked, that the Board can examine the underlying reasons for the suspension? I'm suggesting that it is in the context after the DONCAS, the appropriate agency, has reviewed. No, but what's the answer to my question? You're not answering my question. My question is, are you suggesting that under Egan we can look at the underlying reasons for the suspension, the Board can look at the underlying reasons for the suspension and determine whether they were arbitrary or capricious? Yes, only after the underlying suspension has been reviewed by the appropriate agency, as it was here. That distinguishes this case from the various cases that the Court has decided in the past. And the reason is this. Egan says these sensitive decisions are committed to the discretion of the agency. In Mr. Bigger's case, the suspension went to the agency, to DONCAS. DONCAS reviewed it. DONCAS said there was no reason to deny him a security clearance. He was then reinstated to duty. And at that point, only at that point, the Board could consider whether the reasons that someone suggested suspension were constitutionally improper and statutorily improper. Otherwise, if that were not the interpretation of the law, there would be a huge public policy problem in that no one could ever, who is a government employee with a security clearance, could ever complain of a retaliation for being a whistleblower or race discrimination or other improper grounds for invoking the suspension process in the first place. Even the language of Egan itself. Well, that seems to suggest that if a security clearance was revoked, but then the revocation was reversed, that Egan wouldn't apply to determine whether the original revocation was arbitrary and capricious. That might be the case. Fortunately, that's not our case. And I would call the Court's attention to the second sentence of the Egan decision. The Court very clearly said that it was considering only the narrow question of what happens when a security clearance is denied or revoked. It never said it was considering suspension. And I think there are policy reasons for that. The policy reason I just mentioned, which is that you can't, there has to be some avenue for addressing these improper reasons for starting the suspension process, because otherwise the government would be permitted to act in a totally arbitrary and capricious way with respect to punishing someone or discriminating against someone. Is there a distinction that works against you between suspensions under 7513 and 7532? Well, this is an interesting issue in this case. I think it does not work against us. For one thing, those are alternate means to the same root. If it's a 7532 suspension for national security reasons, the procedural due process is less in the first place. But even the government says in its brief that the nature of this case is a, this is an appeal from the MSPB's decision to sustain the Navy's indefinite suspension of Mr. Biggers based upon the suspension of his security clearance. Later, however, in the government's brief, the government argues that actually this was only a suspension under 7513, not under 7532, and therefore the board has no right to look at back pay or anything of the sort. But arguably this isn't an Egan case, because the issues that Egan precludes us from reviewing have already been made by the Navy. It's been determined that he wasn't properly suspended. And so the question is back pay. And then when you follow the train of these statutes and regs, you run into whether he was suspended under 7513 or 7532. Well, I think what the court is referring to is the regulation, which refers to an employee who is restored to duty under the provisions of Section 3571. And then if you go to 3571, it refers to 7532. But he wasn't suspended under 32. But A, that's accurate in technically referring it. We're looking at a regulation of the Department of the Navy. If the court were to look at the Back Pay Act, which is a statute Congress enacted, it does not make that distinction. The Back Pay Act, which is Section 5596, says nothing about the ground of it. It simply says that an employee who is found – let me see if I can find the language. In any event, it doesn't make – I don't want to go through 5596 as subdivisions. Affected by an unjustified or unwarranted personnel action. Affected by an unjustified or unwarranted personnel action. How do we know that the suspension was unjustified, even if after investigation it turns out that the Navy decided that he should get his clearance back? Two reasons. First of all, just as when the Navy says your clearance is revoked or denied, the court is required to accept that and not look behind it. When the Navy says your clearance is not revoked, then the court – and your suspension is terminated. The court may not look behind it. The board may not look behind it. Let me see if I can focus my question. It seems to me that a suspension could be well justified even if after further investigation it is lifted. That is what is known at the time of the suspension is enough to say we don't take the risk. We're going to learn more later. They did learn more later and say, oh, turns out there really isn't the problem that we had good reason to think that there was. That is correct, Your Honor. That's the second part of my answer, however. When you get to the point that the suspension has been overturned, then we no longer have exclusively a national security concern in why he was suspended. At the very least, we ought to be able to look and see why he was suspended. That could be a pretty good argument, and it seems to have been adopted by the D.C. Circuit in the Brown case. The problem is that our circuit is bound by the Jones case, which reaches a different result, right? I mean, what your argument is directly inconsistent with Jones, isn't it? Well, a couple of things. The thing about Jones is that what the court really looked at in Jones was the due process argument that the employee made. The due process argument there was that he had a constitutional right to a security clearance, and the court very clearly and explicitly said there is no such constitutional right. But we didn't make that argument. No, but at the end of Jones, they consider the Bank Pay Act, and they say as the law now stands, however, since we've upheld the suspension, there's no basis on which we could award them back pay for that period. Well, since we have upheld the suspension, but the court only upheld the suspension in there against his claim of a constitutional right to a security clearance. It didn't, the, and it says so right at the beginning of the opinion, just before room and numeral one. We uphold the suspension on the ground that the petitioners have no property or liberty interest in access to classified material. But if you, this takes me back to my initial point, and this ties the Bank Pay Act issue to the Jones, Egan, what happened here situation. The, at some point in the contest, after the security clearance has been reinstated, after the termination has, after the suspension has been terminated, unless there is an avenue to look at whether there was any improper motivation for the termination as the D.C. Circuit held there was, I think Rattigan also. One set of statutes that Congress enacted is being given precedence over another set of very important statutes that implicate equally important public policy considerations, and that is fairness and the whistleblower statutes. So you have to have, you have to allow the process to continue, and I don't believe that the final statement in Jones addressed this question at all. I never looked, the Jones court never looked at what happened after the suspension process, and that's what I'm asking the court to be accountable for. Well, sure they did. They said that the suspension was terminated. The suspension was terminated. They said it's, we recognize that it's unfair that he can't get back pay for the period that the suspension was in effect until it's later terminated, but the statute doesn't provide for it. I believe the statute doesn't bar it, though. The statute, the back pay act says if he was wrongfully suspended, if it turns out to be wrongful, I think that gives this court adequate room, and the court may have to move away from Jones, but I think Jones, because it specifically focused on the right to a clearance rather than the right to the back pay, I don't think the Jones court reached this issue at all. Can I ask a record question? Is there something in the record that shows us what the Navy security officials thought about any difference between the information that they had upon initiating the suspension and the information and conclusions that, information they had The, no, I don't think there is in the record, Your Honor, and I don't, if I recall what happened, there was not at all, I will confirm that with trial counsel while the Navy is arguing that. Wasn't the lifting of suspension the result of an internal appeal of the suspension? It was, the lifting of the suspension went all the way to Doncaster. It was the Navy, but it was the agency rather than the commander. Yes, that is correct. And do they typically provide explanations of their decisions? I think they do not, Your Honor. So wouldn't an inquiry into the bases of their decisions, in fact, be required to determine whether there was a difference in information so that the suspension was well warranted on the information that the Navy had at the time? I don't think so, Your Honor, because that inquiry can't be made until the other inquiry, and we've never had discovery on the other inquiry, was there retaliation and discrimination in effect? And if you can't look at that, you never even get to the question of are we balancing that against the security determination? You know, if the facts turned out to be on that inquiry that there was no evidence of retaliation, then I think the court would have to assume there was a security reason. But until we have an opportunity to do discovery on those facts, that question cannot be answered. I'd like to save my one minute for Republicans. We'll give you two minutes. Thank you.  Ms. Stern. May it please the Court. The Board properly applied the Supreme Court's decision in Egan in this case when it affirmed Mr. Bigger's indefinite suspension. But why is this an Egan case? Egan relates to merits, and the agency has already, in effect, decided the merits by saying he was improperly suspended. That's not what the agency said, Your Honor, and I respectfully direct the Court's attention to the Doncaf decision, and that's in the appendix at page 105. And Doncaf refrained from saying anything about the merits of the original suspension. In fact, what they said was that they were not going to permanently revoke his clearance because they found him eligible, and specifically in paragraph 2, they said that any comments were sufficiently explained, mitigated, or extenuated circumstances were provided. And then in paragraph 3, they cautioned Mr. Bigger that receipt of any derogatory information, especially of a nature similar to that which occasioned his original suspension of a security clearance, would be cause for immediate reconsideration. So if anything can be gleaned from the Doncaf decision about the original suspension of a security clearance, it's that it was warranted because if any additional information similar in nature comes in, they're going to immediately reconsider his security clearance. But in fact, all the Doncaf decision did was see him eligible to hold a security clearance. They did not render any opinion about whether the original indefinite suspension was warranted or not, and the Board properly did not look at the merits of that original suspension of a security clearance pursuant to the Supreme Court's decision in Egan and versus King. Can you address something that your red brief, I think, does not address? Certainly not. Explain how, under the logic of Rattigan, you should win here. Rattigan was, first of all, obviously not binding in this Court because it's a D.C. Circuit case. But even so, the Rattigan Court went to great pains, because they issued a second decision, to really make their holding extremely narrow. And they made very clear that it does not apply to the individuals who entrusted with authority to make the security decision. Rather, it applies to individuals who simply report information to those in a position to make the security decision. And in this case, there's no dispute that the commander... No, no, I guess I want to understand that. Rattigan was a Title VII case? Rattigan was a Title VII case. And in Title VII, you have to sue somebody who has employment decision-making authority. Right, but the people that... So, it can't be just about the people who supplied evidence. Well, when the decision was clarified, Your Honor, the D.C. Circuit narrowed its opinion very, very explicitly, and said that in that case, the only people who could possibly be held liable under Title VII were reporters who made knowingly false reports, but not those entrusted with the security decision itself. And in Rattigan... Just, I mean, educate me on this. Is there something in Title VII that allows suit against such people, even if such people are not responsible for the adverse employment action, that is not responsible for making the employer's decision? Your Honor, I guess I'm going to have to plead ignorance about exactly who Title VII allows you to sue and who it doesn't, because I don't really do Title VII cases. But I think a very careful reading of the Rattigan case, the Rattigan court was very cautious because of the constraints put on it by the Egan case. And because the government had urged, in fact, reconsideration... I understand that it was cautious. I sort of expected in your red brief for there to be two pages dealing with what is obviously the most important recent out-of-circuit precedent that explains what can and can't be done without violating Egan, like looking into certain kinds of discrimination allegations, but somehow stopping it. And so now we have to spend time at oral argument about it. I apologize, Your Honor, for not including that further argument. Well, then explain it to me. Don't tell me they were cautious. The only way I can explain it is that reading that opinion, it stands for the proposition that the individuals who are responsible for making the security decision are not the ones whose decisions can be reviewed or whose comments can be reviewed. It is those who are not entrusted with making that decision, only those who are reporters who provide information to those who make the decision. Was there a concession or something in that case that the security clearance decision makers, if they had only known that these other people were feeding them false information, would not have made the decision, and therefore the government is happy to pay Title VII damages? I don't recall there being such a concession in that case. But I do recall the D.C. Circuit limiting the decision at the government's urging. It would not be applicable in this case because we're not dealing with reporters. We're dealing with the decision of the ultimate decision maker, the commander. Ms. Stern, looking at the Back Pay Act, an employee who has been affected by an unjustified or unwarranted personnel action, are you saying that this is still an Egan case because we can't review whether it's unjustified or unwarranted? We just know that the suspension was removed. Is that the point? Exactly, Your Honor. There's been no finding by the board that he suffered an unjustified or unwarranted personnel action. To the contrary, the board confirmed the suspension. Can that be inferred by the fact that they reinstated him? No, it can't, Your Honor. Again, the reinstatement was simply based on the fact that Don Kauff ultimately found him to be eligible to hold the security clearance because they were satisfied that there was sufficient reputation of whatever information justifiably originally led to the suspension. That doesn't mean the original suspension was unwarranted? It absolutely does not, Your Honor, because Don Kauff didn't address, and in fact to the extent that they can be read to have addressed it at all, they suggested that the original suspension was warranted. They said that if any additional similar information came in, they would immediately reconsider whether his security clearance was justified. They did not rule on the original indefinite suspension or whether the suspension, the original suspension of the security clearance. They just ruled on the revocation point? Excuse me, Your Honor. They just ruled on the revocation issue? They had issued, yes, Your Honor. They had issued a notice of intent to revoke based presumably on the same information that the suspension was based upon, and then after considering additional information that they found mitigated and explained it, they decided revocation was not necessary and that he was eligible. They did not, however, rule on the original suspension of his security clearance, and for that reason the Board properly found that the indefinite suspension from duty was appropriate and there was no unwarranted or unjustified personnel action that would warrant back pay under the Back Pay Act. This case really is constrained by the Supreme Court's decision in Egan, this Court's decision in Cheney, and also the Court's decision in Jones with respect to the back pay. And although, as the Court said in Jones, it often appears to be a harsh result when someone ultimately is deemed eligible, unless Congress changes the law, that is the proper result in this case. Well, Jones says we have upheld the suspensions. That's not true here. It is true here that the Board properly upheld the suspension, the indefinite suspension from duty. Not we. Not we. Well, there's no basis for this Court to reverse the Board's proper finding, proper upholding of the indefinite suspension, and because the indefinite suspension is proper, the Jones case does control on the back pay. Do you happen to know if Rattigan remains live as a case or did it get settled or something on remand? I don't know the answer to that question, Your Honor. I mean, there do seem to be some issues as to the scope of Egan as applied to Title VII, whistleblower, and things like that, right? Well, the Rattigan case is the only case that I'm aware of that makes that, that seems to expand a little bit on that, to create an opening where none existed. I think this Court actually has been very careful not to expand that, and they rejected arguments that they're entitled to look at whistleblower claims or discrimination claims merely because they rise in the context of a security clearance suspension. In fact, just very recently in Kaplan v. Conyers, this Court was quoting Chief Judge Markey's comments in the Federal Circuit's Egan decision where he addresses the concern that security clearance suspensions may be motivated by retaliation or discrimination and that we won't be able to get to those. Yeah, but there's also a footnote in Kaplan saying we don't reach the question of whether this same rule would apply to Title VII and things like that. Excuse me, Your Honor. There is a footnote in the Kaplan case that says we are not deciding whether this theory applies to Title VII cases. Yes, Your Honor, but it's been very clear that it does not apply in these kind of cases, and it's been very protective of the fact that they cannot look at discrimination issues in the context of looking at the merits of the suspension of security clearance. And if there are no further questions for the reasons that we stated in our brief and today's oral argument, the Board's decision should be affirmed. Thank you. Thank you, Ms. Stern. We'll give Ms. Lashworth two minutes to repose. Two minutes, Your Honor. The language counsel quoted from the Doncaf decision is boilerplate. Every Doncaf decision says if there's any further derogatory conduct like this, we'll re-examine it. But that does not mean Doncaf made a specific determination with respect to Mr. Biggers. As to the individuals entrusted with the decision... No, but they didn't say in that decision that the suspension was unjustified. They say we've considered this, and the proposed revocation is unjustified. That's correct, Your Honor. And just as we cannot look behind that when they say the revocation is justified, we cannot look further behind it when they say the suspension is unwarranted. That's what MSPB is for. After the fact, after the appropriate agency has made a determination at that point, in order to protect other civil rights and 14th Amendment rights, we have to look at the motivation for the decision. That's what Rattigan says. The additional fact of this case, the underlying facts, were that Mr. Biggers was accused of not maintaining security when it turned out the problem was, A, that someone else, before he ever took the job, all of these security problems had developed. He wasn't trained to deal with them. After the fact, he participated in an EEOC proceeding on behalf of another employee, and there was apparent retaliation for that. There is a basis. There's no need to reverse the Board on the issue of suspension. The Board didn't reach the question. The Board said we don't have jurisdiction over this question. That's why this case is different than Egan, and that's why this case is different from Jones. In Jones, the Board had upheld the suspension. Can you just remind me, the allegation of wrong here by your client is? The allegation of wrong by my client is that he was suspended because he refused to go along with what his command asked him to do and testify falsely in an EEOC proceeding. He believed that the command was a retaliation under the whistleblower. Thank you, Ms. Lasher. We'll take the case under advisement.